# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : Case No. 19-10289 (LSS) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

----------------------------------------------------------- x

| | |
|---|---|
| IMERYS TALC AMERICA, INC., IMERYS TALC VERMONT, INC. AND IMERYS TALC CANADA INC., | : Adv. Pro. No. 21-_____ (___) |
| Plaintiffs, | : |
| v. | : |
| Abagail and Taylor Phillips; Abigail Akzin as SA of Estate of Michael Azkin; Addy Rodgers, PR of Estate of Solomon Rodgers; Agnes Holmes; Alan and Mary Koehler; Alan and Barbara Eulau; Alejandro and Ana Maria Ramirez; Alice Williams, Susan Davenport and James Ellis, as the surviving heirs of Robert Ellis; Allen and Connie Webb; Allen Ricci; Alonzo Guyton Jr and Alfreda Guyton; Altheria Grandberry (PR Estate of Katherine Gamble); Alvin and Dana Jackson; Amanda Clinton; Amos and Charlotte Herring; Amy Duarte; Amy S. Rodriguez; Ana Hermosillo and Martin Felix; Andrew Curtin, SA of the Estate of Cynthia Cartwright, and Betty Ann Cartwright; Andrew R. Novak, SA of the estate of Edward Novak; Andrew Theodorou; Individually and as Special Administrator of the Estate of Jean Norman; Angela Clegg; Angela Ferrara; Angela Hood, PR of the Estate of Mary McBrayer; Anita Boyle; Anita Sanden; Ann and Ronald Klatt; Anna Duncan; | : |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

Anne Mazzarella, PR of Estate of Chris P.          :
Mazzarella; Annette Buckley; Annina Castle;        :
Anthony and Leia Knox; Anthony Golladay; April:
and Edwin DeJesus; April Romanillos, PR of         :
Estate of Alan Romanillos; Arlene Feighery;        :
Arlene Strapp of the Estate of Bernard Strapp;     :
Arlene Treme, SA of the Estate of Harold Treme;  :
Arthur E. Bormann, Jr.; Arthur Friedman (PR of   :
Estate of Ilana Friedman); Arthur W. Johnson;      :
Ashley Long; Audie D. and Alvin Falk; Balbir Bal:
(PR of Estate of Jaspal Bal); Barbara and Howard :
Crowder Jr., heirs of the estate of Howard         :
Crowder, Sr.; Barbara and Jason Cartwright;        :
Barbara and John Johnson; Barbara and Michael    :
Lawson; Barbara and Robert Seyfert; Barbara        :
Bucaro; Barbara Cohen; Barbara Davis, Executor  :
of Estate of James Davis; Barbara Hoffpauir, PR    :
of the Estate of William Sipes; Barbara Humphrey:
and Beverly Paulson; Barbara Keith (SA of the      :
Estate of Iona Mitchell); Barbara Light and Duff   :
Stanley; Barbara Loranger; SA of the Estate of     :
Jeanett Rego; Barbarann Loconte; Benjamin and   :
Dana Locke; Benjamin and Wanda Cundiff;          :
Bennie and Shiann Harris; Benny and Tracy          :
Tidwell; Benton Street III; Bertha Maddox;         :
Betsey and Jody Hardman; Betty and John H.        :
Jones; Betty Dean, as PR for the Estate of Thomas:
Dean; Betty J. Walker; Betty Jo Kirkwood; Betty  :
See; Beverly and Donald Crozier; Beverly and       :
John Kerley; Beverly Ann Troxler-Dixon; Billie    :
Jean and Jeremy Johnson; Billy and Beverly         :
Washburn; Bobbie and John Butler; Bobbie Joe     :
Flater as PR of Estate of Rose Flater; Bonita and  :
John Morgan; Bonita and Roger Osborne; Bonnie :
Rice, as surviving heir of Gary Rice, deceased;    :
Bradley and Nancy Cook; Brandon Gravot, PR of  :
the Estate of Kevin Granot; Brenda and Myron      :
Strang; Brenda Pautler, PR of the Estate of Robert:
G. Pautler; Brenda Reimel; Brenda Ritchey,         :
individually and as Spec. Administrator of the     :
Estate of Joseph Ritchey; Brenda Robertson (PR  :
of Estate of Freddie Massey); Bret and Rita Faye  :
Helton; Brian Clark and Zalema Rambarran;         :
Brian Davis, PR of the Estate of Kenneth Stanley :
Davis and Barbara Davis; Brian Fiddes; Brian       :
Joseph Gref; Brian Siesto, Exec. Of the Estate of :

2

Regina Siesto, and Eugene Siesto; Bridget Rini,           :
PR of the Estate of William Rini; Bruce and               
Dorris J. Spencer; Bryan Elfant (Exec of Estate of :
Josephine Marchesano); Bucky Chamberlain;                 :
Buford Wayne Goss and Christine Goss; Burks               :
and Gaynell Woods; Burt Zabotinsky; Byron and :
Michelle Van Den Berghe; Calvin Powell;                   :
Candace Coyle, PR of Estate of Kevin Coyle;               :
Candace Rego and Ashley Rego (Estate of                   :
Samantha Leigh Gentle); Candyse and John                  
Stanford; Caretta McLean, special administrator           :
of the Estate of Wilton L. McLean; Carl and Jodie :
Cook; Carl and Cora Smith; Carl and Vera                  :
Gregory; Carlotta Cinelli, PR of the Estate of John :
Daniel Andrade; Carmen Santana; Carmen                    
Verdugo-Woody (Administrator of the Estate of :
Mario Verdugo); Carol and Dieter Fust; Carol and :
James Ylitalo; Carol and Terry Messerli; Carol            :
Dininny, SA of the Estate of Lawrence Dininny;            
Carol Mattingly; Carol Violante (PR of Estate of :
John Violante); Carole Atwood; Carolyn Michelle :
Pryor; Carolyn Morse as heir to Estate of Billy           :
Morse; Carrie and Matthew Winchester; Catalina :
Ayon; Catherine Fulmore, Deceased and Denise :
Fulmore O'Neal as SA; Catherine and Clifton               :
Cupps; Catherine Mahoney; Cathie Spencer,                 
Administratix of the Estate of Douglas Spencer; :
Cecelia and Thomas Jones; Cecil Beasley;                  :
Cessaly Hutchinson; Chad Briney, Individually :
and as Special Administrator of the Estate of             :
Rosemary Jones-Briney; Charlene Cornett, PR of :
the Estate of Jerry Elmore; Charles Adams;                :
Charles and Betty Lofton; Charles and Cynthia :
Nipple; Charles Hodges; Charles Kowal, Executor :
of the Estate of Barbara Kowal; Charlotte                 
Hottman, deceased and Bethlyn Vertram as PR; :
Cheryl and Mark Myers; Cheryl Sumner; Chris :
and Mary Cook; Christina and Ted Lee; Christine :
and Edward Lord; Christine and William                    :
Anderson; Christine Margarum, SA of Estate of :
John E. Margarum; Christine Willie, SA of the :
Estate of Thurman K. Willie; JR.; Christopher and :
Angela Chapman; Christopher Olmstead, PR of :
the Estate of Dorothy Olmstead; Christina                 :
Prudencio; Clare and Susan Hirschi; Clare Altieri; :
Clarence and Charlotte Mallory; Clarissa Abril :

and Michael Abril; Clark and Barbara Payne;                    :
Cleave Miller; Clifford and Randa Russell;                     :
Clifton and Susan Dotson; Clinton Rogers,                      :
Special Administrator of the Estate of Douglas                 :
Rogers; Clyde Stacy and Hazel Stacy; Colleen                   :
Berry; Colleen Wheeler; Connie Denney; Connie                  :
Sims; Connie Whittlesey, as surviving heir of                  :
estate of Yvonne Whittlesey; Corrine Francen, as               :
PR of Estate of Deborah A. Phillips; Coy Damon,                :
PR of the Estate of Johnny Damon; Curtis Clayton:
Jr.; Curtis E. and Elsie M. Walgamott; Cynthia                 :
and Robert Decaire; Cynthia Bozzo; Cynthia                     :
Crouch; Cynthia Pagano-Michels and Thomas                      :
Michels; Dalal Metwally; Dana and Krystoff Ost;                :
Dana and Brian Farrell; Dana and Dr. James                     :
Bruce; Dana Owens; Daniel and Jennifer Deems;                  :
Daniel and Jayne Burnikel; Daniel and Suzie                    :
Smith; Daniel Cattani; Daniel Everhart; Danielle               :
Jane Smalley; Danny and Mary Bruner; Daphne                    :
Hemmings; Daronda Williams, PR of the Estate                   :
of Leo E. Williams; Darrell and Tammy Keeton;                  :
Darrell Bajo and Jacqueline Kaui Morimoto-Bajo; :
Daryl and Linda Yoder David and Mary Pender;                   :
David and Lisa Dumford; David and Nelda                        :
McCullough; David and Sharon Parker; David                     :
Clugston; David Cochran; David L. Lawson;                      :
David Lum; David Wilson; Dawna McGill, PR of                   :
the Estate of Jackie Lee Jones; Dayton and Rose                :
Greer; Deborah Collins-Freddoso and Alfred                     :
Freddoso; Deborah Goerg, PR of the Estate of                   :
Carol Goerg; Debra Ann Taylor; Debra Arone                     :
(PR of the Estate of John E. Nicolay, Jr.); Delmar             :
Booker (PR of Estate of Ralph Booker); Delores                 :
Wells (PR of Estate of Reginald Wells); Denisa                 :
Villarreal (PR of Estate of Mario Villarreal);                 :
Dennis and Patricia Smith; Dennis C. Underwood;:
Dennis Laugholin; Dennis Young; Denyse Ames-                   :
Fritz (Estate of Steven J. Fritz); Deron Roberts;              :
Diandre Rucker, Administrator of the Estate of                 :
William A. McGee; Diane and Gary Brown;                        :
Dianne and Christopher Lazette; Dianne                         :
McCullough and Floyd David Cooper, PR of                       :
Estate of Olin D. Cooper; Dirk and Janette                     :
Peterson; Dolores Gomez; Domenica LaBarr-                      :
Mabry and Amanda LaBarr-Mabry; Domonic and :
Diane Quitoni; Don and Bobbie Gunn; Don Pisel                  :

(PR of Estate of Judith Pisel); Donald and Baiba          :
Kahn; Donald and Teresa Kachermeyer; Donald               :
and Bonnie Kotzerke; Donald and Patricia Ezell;           :
Donald and Shirley Ann Yasick; Donald Maklik,             :
PR of the Estate of Marilyn Madlik; Donald                :
Thomas; Donna Ivey, PR of Estate of Joseph Ivey;:
Doreen Myers; Doris and Temistocole Medina;               :
Doris and Raymond Havlick; Doris M. Seastream,:
PR of the Estate of Dorothy T. Fillmore; Doris            :
Neumann; Doris Regan, Executrix of the Estate of:
Robert Regan; Dorothy Hensley; Dorothy                    :
Jackson, PR of Estate of Thomas Jackson;                  :
Dorothy Lee Thomas, PR of the Estate of William :
D. Thomas; Dorris Creer and Stephanie Creer              :
(Heirs of Eva Creer); Douglas and Kathy Crabb;           :
Douglas and Carolyn Reynolds; Douglas and                :
Lorena Schnitzler; Dr. Hayam Shaker,                      :
individually and Peter Raouf, as Anticipated              :
Administrator Ad Prosequendum for the Estate of :
Nancy Roufail, deceased, and Dr. Raouf Sidra and:
Sanda Raouf; Dr. Luisa Stigol; Dr. Olivia Garza          :
and Jesse Wood; Duane and Marsha Russell;                :
Durrice and Rebecca Garvin; E. Raymond Fields,           :
III, Executor of the Estate of Michael S. Fields,         :
and Susan Fields; Eda Best; Edgar and Margaret           :
Stuckett; Edgar Green and Cheryl Green; Edward           :
and Judith Goderre; Edward and Carol Sands;              :
Edwina Abram, et al.; Eileen and Dr. John                :
Pettijohn; Elaine Markham, PR of Estate of John          :
Markham; Elaine Oglethorpe, SA of the Estate of :
Clarence Oglethorpe; Elaine Ritcherson, PR of            :
Estate of Norman Ritcherson; Elaine Todd; Elaine:
Uffenbeck (PR of Estate of William Uffenbeck);           :
Elenor Castro, PR of the Estate of Leonor Grajo;         :
Elisabeth and John Britt; Elizabeth and Bradford         :
Watson; Elizabeth and Gary Meikle; Elizabeth             :
Meyers, individually, and Robert Meyers,                 :
individually and as PR of the Estate of Robert           :
Elmer Meyers, Jr.; Elizabeth Milan; Elizabeth            :
Simmons; Ella J. and Harry D. Graham; Ellen              :
Geyer; Elmer and Phyllis Boggs; Elnora and               :
Jimmie Lee Snipes; Emilia Brady (PR of Estate of:
Rafaella Marsico) and Francesco Marsico; Emilio :
and Claudette Cammalleri; Emma and Walter                :
Griffin; Eric and Michele Irvin; Eric Padilla; Erik :
and Tari Curtis; Ernest and Verna Parisien; Estate :

5

of Edward Finazzo; Estate of Valerie Jo Dalis and :
Peter Dalis; Esther Hyland; Eugene and Kathy :
Maxey; Eules and Phyllis Parker; Eva Beuhler :
(PR of the Estate of Roger Beuhler); Evelyn :
Israel, PR of the Estate of Helen Walters, Mark :
Worthington and Charles Worthington; Evelyn :
Notley; Eydie Hauer, PR of the Estate of Connie :
Gray; Fatemeh Ehsani, Poupak Pries-Shalchian :
and Parastou Shalchian, surviving heirs of Hassan :
Shalchian, Deceased; Faye and Benjamin Hunter; :
Felix and Kathy Johnson; Ferdinand and Marilyn :
Kirshberger; Ferril Dean Hurst; Floyd and Valerie :
Blakey; Francine Shuman; Francis Norton; Frank :
and Vanessa Diaz; Frank and Diane Principe; :
Frank Cairo (Executor of Estate of Nancy Cairo); :
Frank Crowther; Frank Kokotajlo; Franklin and :
Helen Shelton; Fredetta Johnson, as PR for Estate :
of Diane Walton; Gale and Carol Reis; Gary and :
Brandy Grover; Gary and Carol Gresch; Gary and :
Lisa Morehead; Gary D. Cash, executor of the :
Estate of Gary W. Cash; Gary Elwell; Gary :
Fonville; Gary G. Taylor and Sheila L. Barrett- :
Taylor; Gary Mize; Gary Plante, PR of the Estate :
of Barbara Susan Henderson; Gaseta Whyte, :
Executrix of Estate of Donald Whyte; Gayle :
Golden, PR of the Estate of Robert Golden; :
Gaylon Bateman; Genevieve Puckett, PR of Estate:
of George Puckett; George and Dianthe Livianos; :
George and Camilla Basnight; George Thacker, :
PR of Estate of Marjorie Thacker; George Weeks, :
PR of Estate of Alma Grace C. Weeks; Geovana :
Haro Magallanes; Gerald and Norma Huggins; :
Gerald Jessup; Gerald Levy; Gerald Schuppert; :
Geraldine MacMinn; Gerilyn Terrano-Urcioli and :
John Urcioli; Gilbert and Venida Hammonds; :
Gina Buenrostro; Gladys Holley (PR of Estate of :
Roy Holley); Glena Wirtanen; Glynnis and :
Neville De Klerk; Gordon Vaughn, PR of the :
Estate of Bobbie Jo Vaughn; Graham White :
(Executor of Estate of Helen White); Grazyna and :
Zdzislaw Kotowski; Gregory Friemann; :
Gwendolyn and Robert Warkentin; Hanna :
Mazariegos, PR of the Estate of Darla Jean :
Mazariegos; Harold and Bette Blair; Harriett and :
Kenneth Silverman; Harry Jordan; Heather Bianca:
Hayes Hatter; Heather Haney, PR of the Estate of :

6

Dean Hasler; Helen Forman; Helen Korhel; Helen   :
Molstad; Helga and Gerald Carline; Henry and   :
Victoria Smith; Herbert Reed II, executor of the   :
Estate of Herbert Reed; Herschel and Melissa   :
Vance; Hilda Rowland (PR of Estate of Weta   :
Manning); Hoda Barsoum, PR of the Estate of   :
Sarwat Gad; Holly Fisher, Executrix of the Estate   :
of Sandra Reichart; Holly and John Kobee;   :
Holtschneider, Betty; Homer and Althea Notter;   :
Hubert and Nellie Van Vugt; Huey Conway;   :
Humberto Macias and Xochita Gonzales; Irene   :
Katsouris; Irie Gonzalez, SA of the Estate of   :
Praxedis Gonzalez; Irma Ramirez; Irwin   :
Schoenbart, PR of the Estate of Phyllis   :
Schoenbart; Isaac Jackson; Isabel and Jose   :
Jaquez; Ivan Robert Stusak, Executor of the Estate :
of Marilyn Stusak; J. Harold Allen, Debra Bennet   :
and Roger Allen, heirs of the Estate of Delta M.   :
Allen; Jackie and Daniel Longoria; Jack E.   :
Taylor; Jacqueline and Edward Trujillo;   :
Jacqueline and John Jones; James and Barbara   :
Hodges; James and Marian Lokey; James and   :
Shannon Burks; James and Betty Arnot; James   :
and Carol Tvardos; James and Cheryl Wallace;   :
James and Frances Smith; James and Gloria   :
Court; James and Linda McGuffee; James and   :
Rosemary Cummings; James and Saralyn Collins; :
James Bradley, PR of Estate of Gail Bradley;   :
James Dunbar; James Lamar Wilson; James M.   :
Wilson and Norma Wilson; James Murray (PR of  :
the Estate of Joan Murray); James and Wanda   :
Russell; James Richardson; James Smith; James   :
Vinson; Jan Deborah Michelson-Boyle; Jana   :
Kern; Jane P. Lange, PR of the Estate of Melvin   :
Lange; Jane Waggoner; Janell Wright, Special   :
Administrator of the Estate of John Wright; Janet   :
and Herbert Johnson; Janet and Frederick   :
Hammett; Janet Miller, Executrix of the Estate of  :
Stephanie Miller; Janice and Milton Markuson;   :
Janice Weiss (Administrator of the Estate of Joel   :
Weiss); Janis Eller; Jannelle Rittersdorf; Jasmine  :
McGuire, PR of Estate of Jazethrine Tuala-   :
McGuire; Jay Chevillet; Jayce Winiarski,   :
Kristopher Winiarski and Jason Winiarski  heirs   :
of the Estate of Leonard Winiarski; Jean   :
Lovechio; Jean Marie Bartlett, individually, as   :

7

Executor and on behalf of all wrongful death                    :
beneficiaries of the Estate of James Bartlett; Jean  :
P. Hug, PR of the Estate of Monique Hug;                    :
Jeanette DeCastro; Jed Crow; Jeffrey and Janese  :
Dobson; Jeffrey and Karen Hebert; Jeffrey Martin :
(Administrator of the estate of Sheila Martin), two :
minor children, Rebecca Dooley and Allana                    :
Shumaker; Jennifer and Neil Phillippi; Jennifer  :
Mantle, PR of the Estate of Elaine A. Service;                    :
Jenny Abell and Henry Mattei; Jeremiah Adams  :
(Executor of Estate of BethAnn Adams); Jeremy  :
Ramaty, PR Of Estate of Margaret Ramaty and  :
Jennifer Jane Hirzel; Jerome Tobler; Jerry and  :
Ann Powell; Jerry White; Jesse and Sarah Woods; :
Jessica Mackinson, PR of the Estate of Bette  :
Whitney; Jimmie and Rozette Moss; Jimmie and  :
Alexis Ballard; Jimmie Hunt (PR of the Estate of  :
Louise Hunt); Jimmy and Bylenda Reich; Jimmy  :
R. Wright, PR of Estate of Jimmy C. Wright; Jo  :
Ann Butler, SA of the Estate of Gene Butler; Jo  :
Jackson, SA of the Estate of Ricky Wayne                    :
Jackson; Joan Arazosa as PR of Estate of Richard  :
Arazosa; Joan Bernatowicz, PR of Estate of John  :
Bernatowicz; JoAnn Hill; Joann Mead, Special  :
Administrator of the Estate of James E. Mead, Jr.; :
Joanna and Jacenty Ruman; Joanna Levine and  :
Timothy Spahr; Joanne and Terry Witter; Jocelyn :
Connors-Dohse; as PR of the Estate of Scott  :
Dohse; Jodie Pritchard; Jody Ingram; John and  :
Carrie Olson; John and Joyce Castro; John and  :
Christine Kopp; John and Iris Buol; John and  :
Janice Murphy; John and Renee Lerock Gary;  :
John Brinker; John Bumstead, Jr.; John Crandall;  :
John Dellinger; John Edwin and Gwendolyn  :
Rathbun; John Lyman; John Montgomery, PR of  :
the Estate of Kimberly N. Montgomery; John  :
Poythress III, PR of the Estate of Bertha Stargill;  :
John R. and Jessica Hightower; Johnnie and  :
Mattie Jackson; Johnny and Nicolina Rodriguez;  :
Jolynne and Eric Biljetine; Jose De Jesus Moreno :
Negrete and Maria N. Toscano Limon; Jose Isabel :
Godina Huerta and Blanca Estellas Lopez-                    :
Covarrubias; Jose Pacheco and Mary Ann                    :
Rodriguez; Jose Soto; Joseph and Patsy Poisson;  :
Joseph and Melissa Marti; Joseph and Patricia  :
Estella; Joseph Hickey; Joseph Hiscock; Joseph  :

8

Lorch Jr. and Norma Lorch; Joseph Schifini;        :
Joshua Tyler; Joyce and Eugene Franchett; Joyce  :
Argo, PR of Estate of Steve L. Argo; Joyce         :
Calloway (PR of Estate of Charles Calloway);       :
Joyce Duddy; Juan Galvan; Jude and Donna           :
Bradley; Judith Baxter, SA of the Estate of James  :
C. Baxter; Judith Covil; Judith Jordan; Judith     :
Lock; Judy Stephenson and Donald Kemp, Jr.;        :
Julia Raschka, David Raschka, Jr.; Terry Raschka, :
Jim Raschka and Leonard Raschka; Julian            :
Williams PR of Estate of Ryan Williams; Kaitlin    :
Jensen; Kandy Drake, PR of Estate of Morris Leo  :
Hendricks; Karen Cox; Karen Goffreda; Karen        :
Mimms-Harris, SA of the Estate of Charles B.       :
Harris; Karen Owens, PR of the Estate of Helen     :
Kinney; Karen Schmidt (PR of Estate of Russell     :
B. Schmidt); Karlene Hollerman; Karma Wheeler :
and Anthony Cabebe; Kath and James Jatras;         :
Katherine Totten, as PR of Estate of James Totten;:
Kathleen Carver, PR of the Estate of Kevin L.      :
Carver Sr.; Kathryn Kowinski, PR of Estate of      :
Nancy A. Kowinski; Kathy and Earl Brown; Kay     :
F. Mulvey; Kayme and Duston Clark; Keith and       :
Shirley Brown; Keith Harlow; Kelly Sandoval;       :
Kelly Wakefield; Kemmley Murray, Individually     :
and as Special Administrator of the Estate of       :
Beverly A. Dixon; Kendall Reamer, obo minor        :
child Corbin Reamor, and as special administrator :
of the Estate of Andrew J. Wright; Kendra Burns, :
PR of Estate of Donna Burns; Kenneth and           :
Genene Broers; Kenneth Lee Jones; Keri             :
Logiudice; Kevin and Cheri Mann; Kevin Becker, :
PR of Estate of Doris Becker; Kim Gray;            :
Kimberly and Michael Camp; Kimberly               :
Lannaghan as PR for Estate of Thomas               :
Lannaghan; Kimberly Settle, PR of the Estate of   :
Jeanne Nelson; Kirk Toepke; Kwan Kim; Laina     :
and Kenneth Bartlow; Laraine Babbitt, PR of the   :
Estate of Eileen Decosta; Larry and Betty Kessler;:
Larry and Stephanie Lairson; Larry Lockwood       :
(PR of the Estate of Tew Lockwood); Lathan and   :
June Dancy; Latoya Chatman, PR of the Estate of :
Bernice Kirkwood, Sonya Baker, Billy Kirkwood, :
and Austin Kirkwood III; Laura and Edward         :
McDaniel; Laura Mull and Robert Mull; Laura      :
Quinn and John Cavallaro; Laura Schuermann;       :

9

Lawrence Anderson; Leanne and John Hurley;     :
Leonard and Cheryl Brown; Leonard and          :
Kathleen Wendowski; Leroy Baker as PR of        :
Estate of Dolores Baker; Leslie and Catherine   :
Fogel; Leslie Tokushimu-Wilson and Scott        :
Wilson; Leutische and Harold Eckert Jr.; Lewis  :
and Willie McKenzie; Libuse Sherwood; Lidia     :
and Antonio Reyes; Lila and Howard Vassar;      :
Lillian Jobe; Lillian Larson; Lind Moon, PR of  :
Estate of Timothy Moon; Linda and Charles       :
Sawka; Linda and James Huff; Linda Cates, PR of :
estate of Maria Cates; Linda Derouin, PR of the :
Estate of Michael Derouin; Linda Gonzalez;      :
Linda Huntley; Linda Lambert, PR of the Estate  :
of Jerry Lambert; Linda McLellan; Linda         :
Schaefer; Linda Trimble, individually and as    :
Executrix of Estate of Mary Mask; Lionel and    :
Peggy Young; Lisa Frace, as PR of the Estate of :
Carole DiCerbo; Lisa Frank (PR of Estate of     :
Judith Wilma Blankschaen); Lisa Haroutunian,    :
Individually and as SA of the Estate of Vanush  :
Haroutunian, Deceased; Lisa Vereen; Lola and    :
Robert Jimenez; Lonnie and Judy Chandler;       :
Lonnie Cormier; Loretta Joplin as PR of estate of :
Marion Joplin; Lori Cowan, PR of the Estate of  :
Polly Beaver; Lorine Crawford, PR of Estate of  :
James Crawford; Lorraine and Stanley Berger;    :
Louis Michel, III; Lucinda and Robert Ivy;      :
Lucyna Kowalska; Luis and Donna Quinones;       :
Luis and Maria Chavez; Luis Malave Trinidad;    :
Lullar Cheek; Lyla Grossman; Lynda and Ennis    :
Raliff; Lyndon Patrie, III; Lynn Davies; Lynne  :
Roy; Madelin and Henry Barratt; Malcolm         :
Fleming; Malgorzata Monko; Manerva and Fayez :
Awad; Marcella and William Buhlig; Margaret     :
and Ronald Cardillo; Margaret Costello, PR of   :
Estate of Timothy Costello; Margaret Martinez;  :
Margaret McConnell, SA of the Estate of Anthony:
McConnell; Deceased; Margaret Rodgers, SA of   :
the Estate of Phillip Rogers; Margie and Chester :
Smith; Margie Thomas, PR of Estate of Marvin    :
Thomas; Maria and Abel Suarez; Maria and James:
Kuykendall; Maria and Joseph Foley; Maria and   :
Victor Pulido; Maria Estella Torres Sandoval,   :
wife of Edmundo Ruiz; Deceased; Maria Garcia;   :
Maria Mundell, Executor of the Estate of Henry  :

10

Mundell; Marian Major, individually and as                    :
Special Administrator of the Estate of Samuel                 :
Major; Marianne Hoye; Marie-Therese Ploof,                    :
Individually and as Special Administrator of the              :
Estate of Donald Ploof; Marilyn Ann and John                  :
Rentko; Marjorie Frith; Mark and Mary                         :
Wasmund; Mark Davis, PR of Estate of Victoria                 :
Davis, et al.; Mark Schlagel; Markesha Davis;                 :
Marla Andrew, PR of the Estate of Jacky Andrew                :
Sr.; Marla Fabia; Michael Botvinick and Dara                  :
Botvinick, executors of the estate of Sondra Ann              :
Botvinick; Marlin Grohl; Maro Avdesian and Verj               :
Naylous; Marrlow J. Keels and Kathy Bradford;                 :
Martha and Cader Cox; Martha Castaneda;                       :
Martha Dickerson, PR of the Estate of Jerry                   :
Dickerson; Martha Everest; Martin and Sarah                   :
Hildebrandt; Martin and Eleanor Cantor; Martin                :
Anderson (PR of Estate of Jason Anderson);                    :
Martin Chow and Huey Kyu Lai; Martin Danaher;                 :
Marvin Fields; Mary and John Iacuzzo; Mary and                :
John Pichierri; Mary and Richard Langrish; Mary               :
Angela Hebner and Barbara Peterson, surviving                 :
heirs of Duane Hebner; Mary Black; Mary C.                    :
Affatati, PR of the Estate of John V. Affatati, Jr.;          :
Mary Ellen Kaleta; Mary Fletcher and Laura                    :
Miner, Individually and as Co-Executors of the                :
Estate of Gail Welch, Deceased; Mary Gansky-                  :
Stevens; Mary Howell; Mary J. and Ronald                      :
Vance; Mary Jackson; Mary Kjeseth; Mary Lou                   :
and Larry Lewis; Mary Louise Barton; Mary Sue                 :
Gallet; Maurice and Rita Castan; Mauricio Tellez,             :
individually and as PR of the Estate of Maria                 :
Tellez, et al.; Melinda Sugidono (PR of the Estate            :
of Richard O. Smith); Melissa Shackelford, et al.,            :
on behalf of the Estate of Marilyn Paternostro;               :
Melva Sue Lockenvitz; Melvin and Louise Galan;                :
Meredith Egli; Michael and Shirley Haines;                    :
Michael and Eva Sannicandro; Michael and                      :
Gaylene Foster; Michael and Hannah Whitney;                   :
Michael and Judith Riccardi; Michael and Karen                :
Pryor; Michael and Kristina White; Michael and                :
Leanna Morgan; Michael Brian Flynn; Michael C.                :
McGuire; Michael Chase; as administrator of the               :
Estate of Sherry Owen; Michael Harris and Davita              :
Harris; Michael Kaplan, PR of the Estate of                   :
Teresa Kaplan; Michael and Kelly Parker;                      :

11

Michele and Joseph Rounsaville; Michelle and          :
Richard Chapman; Miguelina Rodriguez, PR of           :
the Estate of Dorina Peralta, et al.; Monica          :
Peoples; Monique Banks; Morley and Samantha           :
Burns; Myra and Lendon Jackson; Nancy and             :
Robert W. Kennedy; Jr., Nancy Oberle, PR of           :
Estate of Thomas Oberle; Nancy Seeney, SA of          :
the Estate of Joseph L. Sweeney; Nancy Solomon,:
PR of the Estate of Earlene Tanner; Narcissus         :
Thomas; Nawal B. Helo; Nedelka Vanlive; Neil          :
Ross, PR of the Estate of Nancy Ellen Ross;           :
Nelson Libell, Jr.; Nicole Matteo; Norberto           :
Mazzei and Ana Maria Mazzei; Norman Carney,           :
Jr.; Nyleen Lonski, PR of the Estate of Benjamin      :
Lonski; Odon Hebert; Orton Wood and Kristine          :
Sommer, surviving heirs of Barbara Wood,              :
Deceased; Pamela Packard, PR of the Estate of         :
Kathleen Packard; Paolo Michele Cirelli; Pasquale:
and Carmella DiPietro; Pat and Mary Ann               :
Standardi; Patricia and Rebert Shader; Patricia       :
and Richard McCarthy; Patricia and William            :
Rohe; Patricia Felts; Patricia Maning; Patricia S.    :
Cagle; Patsy Ann Lair; Patsy Young; Paul and          :
Amy Haynes; Paul and Karen Nell; Paul and             :
Katrina Patterson; Paul Klick III and Julie Klick;    :
Paula and Daniel Westrate; Paula Goodman, SA          :
of the Estate of Neil K. Goodman; Pearlie Glass;      :
Pedro Preciado; Peggy and John Carlson; Peggy         :
and Peter Gattone; Peter and Claudine Benmar;         :
Peter Dickinson; Phoebie Ferguson (PR of Estate       :
of Gwendolyn Boyd); Portia and Stanley Godfrey;:
Ralph and Gladys Vest; Ralph Butler; Randall and:
Starla Rice; Randy and Terri Theriot; Randy           :
Derouen; Ray and Darlene Basden; Raymond and :
Debra Peterson; Raymond and Edna Tomlinson;           :
Raymond and Lucille Whelchel; Raymond and             :
Mary Gerharz; Raymond and Sandra Heston;              :
Reath Leith, SA of the Estate of James Mitchell       :
Leith; Rebecca and Allan Bathon and Diane             :
Curran, on behalf of their deceased mother            :
Jeanette Curran; Rebecca Brewer; Rebecca              :
Lecomte, PR of Estate of Frank Lecomte;               :
Rebecca Schaller; Rhonda and Walter                   :
Manczurosky; Ricardo and Pilar Rimondi;               :
Richard and Beverly Binder; Richard and               :
Aparecida Smetana; Richard and Carolyn Baker;         :

Richard and Michele Bayle; Richard and Robin          :
Bowling; Richard and Valerie Lorenzo; Richard         :
Beccia and Kelly Ann Beccia; Richard Conti, SA        :
of the Estate of Patricia Conti; Richard Regalado;    :
Richard Reiter, Executor of Estate of Sherry Beth     :
Reiter; Rita Castro, Executor of the Estate of        :
Ramon Castro; Rita Nelson; Lauren Nelson and          :
Jenelle Atkins, surviving heirs of Robert Nelson;     :
Roberlyn Swilling (PR of the Estate of Martha         :
Barnes); Robert and Catherine Runne; Robert and       :
Linda Brady; Robert and Irma Slice; Robert and        :
Jennifer Fitzpatrick; Robert and Linda Downing;       :
Robert and Lori Daniele; Robert and Marlys            :
Oliver; Robert and Nancy Dudte; Robert and            :
Nancy Picklesimer; Robert and Rose Amron;             :
Robert and Sarah Gonzales; Robert and Sharon          :
Reyes; Robert and Sheila Vezeau; Robert Baker;        :
Robert Brown, as PR of the Estate of Theresa          :
Brown; Robert D. Harter; Robert Greene III and        :
Steven Brake (OBO Deborah Greene Brake);              :
Robert Jones and Mary Karen Jones; Robert             :
Newman; Robert Olson; Robert Publik (PR of            :
Estate of Francis Publik); Robert Serino and          :
Rosemarie Serino; Robert Stengel; Roberta and         :
John Cole; Robin Mattocks and Lorna                   :
Winterrowd; Robyn Agri as Executor of Estate of :
Orin Agri; Roland and Jeanne Tarbox; Roland and :
Ragina Rogero; Rolando and Araceli Faz; Ronald :
and Phyllis Hall; Ronald Money; Ronald                :
Raymond Miller, Individually and as PR for the        :
Estate of Veronica Miller; Ronald Wood, Jr., PR       :
of the Estate of Ronald C. Wood, Sr.; Roney and       :
Diane Temor; Ronnie G. Bolin; Rosalia and             :
Enrico Gagliardi; Rosalie Santos, PR of Estate of :
Elena Rodriguez; Rosanette Toner, PR of the           :
Estate of Francis J. Corso; Rosario Escobar; Rose :
Tobak, individually and as PR of the Estate of        :
Michael J. Tobak, Jr.; Rosemarie Shook;               :
Rosemarie Vendeland; Rosemarie Windisch;              :
Rosemary Dobson; Individually and as Personal         :
Representative of the Estate of Eric Dobson;          :
Rosemary Rowden (PR of the Estate of Naomi            :
Combs); Rosetta Nettles; Ross and Cynthia             :
Hansen; Rowland and Teresa Facciolini; Ruby           :
Bain, PR of Estate of Jimmie Bain; Ruby Brown         :
Williams, PR of the Estate of Art L. Wyatt; Ruby :

13

Jones, Deceased and Administrator Gladys :
Elizabeth Dewitt; Rubye and Richard Brindley; :
Rudolph and Deborah Dezorzi; Ruth and George :
Regnerus; Ruth and George Sinn; Ruth Horsch- :
Nusbaum; Ruth P. Marks and Alan Marks; Ruthie :
Hurt; Raymond and Catherine Jourdan; Sadie :
Burks; Sally Gettys, Individually and as Special :
Administrator of the Estate of John Gettys; :
Salvatore and Mildred Mascioli; Samuel and :
Francis Walker; Samuel Lichtenstein (PR of :
Estate of Lynne Lichtenstein); Sandra and Brian :
Weathers; Sandra and Loren Dockery; Sandra and :
William Whitney; Sandra Kay Perkins, PR of :
Estate of Jeanne Perkins Buntin; Sandra Lozano, :
PR of the Estate of Juan Lozano; Sandra :
Mulcahey; Sandy Reed, PR of the Estate of Shirly :
Hatfield; Sarah and Philip Perkins; Sarah Tindall; :
Savannah Thompson (Administrator of the Estate :
of Gary D. Thompson); Scott and Lindsey :
Anderson; Scott and Brenda Heitkamp; Scott and :
Teresa Weaver; Scott Raffety, PR of the Estate of :
Janyce Raffety; Shafieh Bryant; Shannon Geisler :
(PR of Estate of Gary Geisler); Sharon Abernathy; :
Sharon and Nathan Bratcher; Sharon and Ronald :
Ringwelski; Sharon Harpster; Sharon Scott :
(Admin for Estate of Shirley Scott), and Michael :
Scott (guardian of minor child John Doe); Sharon :
Spinks; Sharon Swedlow; Sharron Holcomb, SA :
of the Estate of Howard J. Holcomb Jr.; Sheila :
Readdy; Sheila Ryan and Shawn Jones; Sherry :
and Daniel White; Sheryllynne Baykal; Shirley :
and Daniel Coulbourn, Jr.; Shirley Folkers; :
Shirley Niemeyer; Silka and Pericles Pujols; :
Silvia Benoit, Executor of the Estate of Wilbur J. :
Benoit, Jr.; Sisca and Christie Yates; Sol Weiss; :
Sonna and William Gregory; Sonya Fazio; :
Spencer Smith, PR of the Estate of Linda Smith; :
Stanley Gray; Stanley Peterson and Debby :
Peterson; Steel Casey, as Special Administrator of :
the Estate of Vera P. Muchow-Casey; Stephanie :
and Lee Milam; Stephanie Clark; Stephanie Faith :
Hopkins Glick and James Glick; Stephanie :
Manning, PR of the Estate of Percell Hudson, Jr.; :
Stephanie Neely (PR of Estate of Thomas Ashley :
Edward Davis; deceased); Stephen and Gloria :
Horton; Stephen and Kathy De Land; Stephen and :

14

Suzanne Kalish; Stephen Wilson (PR of the Estate :
of Virginia Wilson); Steve Tyler, PR of Estate of  :
Hestor Tyler; Steven Ohlund; Steven Trotter; Sue  :
Sandwin; Susan and Ernesto Perez; Susan          :
O'Connor, PR of the Estate of Patrick O'Connor;   :
Susan S. Barkley; Susan Bonnem; Susan Speweik;:
Susan Tanney, as PR of the Estate of Patrick      :
Tanney; Suzanne James; Sylvia Gibson; Tamara     :
Blum and Alan Bennett; Tameron Gilts (Special    :
Administrator of the Estate of Edward E. Black    :
Sr.) and Wanda Jo Black; Tammy and Steve         :
Weaver; Tammy Jenkins, PR of the Estate of        :
Mary E. Anderson; Tanga St. John, SA of the       :
Estate of Janice Mae Campbell; Tawanna Floyd     :
(PR of Estate of Robert Floyd); Teana Brown, SA  :
of the Estate of Cecil L. Foster, and as Guardian  :
of Leona Foster; Temple Goodhue, PR of the       :
Estate of Albert Goodhue III, Albert Goodhue IV  :
and Nathaniel Goodhue; Teresa and Tedoro         :
Saavedra; Teresa Grajeda; Teri Walston, PR of     :
Estate of John Dale Walston, two minors, John     :
Walston, Jr., Rachel Walston and Phillip Walston; :
Terrence and Karen Taviner; Terry and Elizabeth  :
Hauser; Terry Elmore (PR of Estate of Delores M.:
Elmore); Terry Smith, SA of the Estate of          :
Deborah A. Smith; Theodore and Joyce Abbott;     :
Theodore and Sue Ann Tomblinson; Theodore        :
Wissing and Wilma Wissing; Theordore Koch;       :
Theresa M. Garcia; Thomas and Catherine          :
Engelhardt; Thomas and Gail McCauley; Thomas :
and Linda Chagolla; Thomas and Linda Weeks;      :
Thomas and Mary Horan; Timonthy Faltus, as SA :
of the Estate of Shari Faultus; Timothey and      :
Johanne Davey; Timothy and Gail Foster;          :
Timothy and Tanya Yerigan; Timothy and Joann   :
Martin; Timothy and Margaret Edwards; Tina and :
Ross Mini; Tina Graham (SA of the Estate of       :
William Osborne Graham); Tina Stewart, PR of     :
Estate of John Terry Stewart; Tolover and         :
Eugenia Rowland; Tracy and Ella Stanley; Tyler    :
and Aubrey Brinneman; Valerie Hunter; Valorie    :
Paxton (SA of the Estate of Michael Paxton); Van :
R. Gideon; Velma Stalnaker; Verna Dozier; Vicki :
Lee Trieglaff and Jon Simonton; Vicki Lee, PR of :
the Estate of Steven Lee; Victor Dyer; Victoria    :
Matthes; Vincent DiBenedetto, PR of the Estate of:

15

Linda DiBenedetto; Virginia Fair (PR of Estate of  :
William Robert Fair); Virginia Harrington;          :
Virginia Hennessy, PR of the Estate of James P.     :
Hennessy; Virginia Musser; Vita Chenet; Walter      :
and Dana Klik; Walter M. and Tammar                 :
Casaravilla; Wanda Hartman (PR of the Estate of     :
Betty Pierson); Warren Knippers, PR of the Estate   :
of Douglas Knippers; Warren Parker; Wayne and       :
Barbara Hyatt; Wayne and Deborah Ledlow;            :
Wayne Yacur; Wendi and Richard Hirshberg;           :
Wendy Hyrkas; Wendy Pickens and Brandon             :
Pickens; Wilbert Candelaria; William and            :
Catherine Benoit; William and Diana Watts;          :
William and Doris Boyer; William and Karen          :
Escritt; William and Katherine Korbholz; William    :
and Margie Anderton; William and Mary Lou           :
Bennett; William and Mary Viola; William and        :
Nancy Ober; William and Yayeth Bruton;              :
William B. Reavis; William Linscott; William R.     :
Cornell, SA of the Estate of Diane M. Cornell;      :
William Spooner IV; William Zelenka, PR of the      :
Estate of Natalie Zelenka; Willie and Verline       :
Coleman; Willie McCain; Wilma Priddy;               :
Winifred and Hani Haddad; Winnifred Perala as       :
PR of Estate of Vernen Perala; Wollo Royall;        :
                                                    :
               Defendants.                          :
------------------------------------------------------------ x

## **DEBTORS' COMPLAINT FOR INJUNCTIVE RELIEF**

Imerys Talc America, Inc. ("**ITA**") and its affiliated debtors in the above-captioned chapter

11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the

"**Debtors**") and plaintiffs in the above-captioned adversary proceeding, bring this Complaint

against those parties listed on **Appendix A** to this Complaint and John and Jane Does 1-1000, who

are plaintiffs or potential plaintiffs, respectively, in the Talc Actions (as defined below).  The

Debtors incorporate by reference the statements contained in (a) the *Debtors' Motion for*

*Preliminary Injunction* (the "**Motion**"), (b) the *Declaration of Ryan J. Van Meter* (the "**Van Meter**

**Declaration**") *in Support of Debtors' Motion for Preliminary Injunction* (cited herein as "**Van**

16

**Meter Decl. ___**"), and (c) the *Declaration of Michael E. Hutchins in Support of Debtors' Motion for Preliminary Injunction* (the "**Hutchins Declaration**") (cited herein as "**Hutchins Decl. ___**"), filed contemporaneously herewith, and further state as follows:

## INTRODUCTION

1.      The Debtors commenced these Chapter 11 Cases to finally and fairly resolve all talc-related claims against them through the consummation of a plan of reorganization that includes the establishment of a trust and channeling injunction pursuant to sections 105 and 524(g) of title 11 of the United States Code (the "**Bankruptcy Code**").  The relief sought by this adversary proceeding — enjoining the commencement or continuation of any Talc Actions against Cyprus (each as defined below) defendants named in this adversary proceeding (collectively, the "**Defendants**")[2] — is critical to the Debtors' ability to proceed with and achieve the purpose for which they commenced the Chapter 11 Cases.

2.      The Debtors, working closely with the Tort Claimants' Committee and the FCR (each as defined below), have achieved a global compromise and settlement (the "**Cyprus Settlement**") with Cyprus Mines Corporation ("**Cyprus Mines**"), Cyprus Amax Minerals Company ("**CAMC**", together with Cyprus Mines, "**Cyprus**"), and Freeport-McMoRan Inc., the parent entity of Cyprus ("**Freeport**" and together with Cyprus, each a "**Cyprus Party**" and collectively, the "**Cyprus Parties**"), resolving the treatment of all Talc Personal Injury Claims[3] relating to Cyprus and disputes regarding entitlement to certain insurance proceeds and

---

[2]      Defendants are plaintiffs in lawsuits that seek to hold or may seek to hold one or both of Cyprus Mines and CAMC liable for Talc Claims (as defined below).  These Defendants, with the exception of the Doe Defendants, are listed on **Appendix A** attached hereto.    **Appendix A** also identifies the law firms representing each Defendant in a filed Talc Action.

[3]      Capitalized terms not otherwise defined herein shall have the meaning set forth in the *Seventh Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Main Case Docket No. 2809] (the "**Imerys Plan**").

indemnification rights as between Cyprus and the Debtors.  The Cyprus Settlement is the product of months of intensive, arms'-length negotiations and is a critical development in the Chapter 11 Cases.

3.     The Cyprus Settlement represents a comprehensive resolution of all disputes with a key party-in-interest and resolves related disputes regarding the ability to access the proceeds of certain insurance policies, which will save the Debtors, their estates, and their creditors significant time, expense, and uncertainty.  In addition to clearing the cloud of litigation obstructing the Debtors' exit from chapter 11, the Cyprus Settlement will also secure a $130 million contribution to the Talc Personal Injury Trust from CAMC, which will meaningfully increase the assets of the estates available for distribution to talc personal injury claimants.  The Debtors believe the Cyprus Settlement is a significant achievement that advances the best interests of their estates and all stakeholders.

4.     A lynchpin of the Cyprus Settlement is an agreement whereby the Cyprus Parties will assign to the Talc Personal Injury Trust any and all rights in connection with certain insurance policies that provide coverage for liabilities arising out of Cyprus Mines' former talc business (the "**Insurance Policies**"), including the right to seek proceeds from such policies.  The Debtors' and Cyprus' respective rights to the Insurance Policies have been the subject of ongoing litigation throughout the Chapter 11 Cases.  Pursuant to an agreed upon order [Main Case Docket No. 309] resolving Cyprus' motion for relief from stay, Cyprus has drawn on the Insurance Policies to defend and indemnify Cyprus in certain lawsuits asserting Talc Claims (as defined below) in which the Debtors and Cyprus are named as defendants.  Because any rights with respect to the Insurance Policies are to be assigned to the Talc Personal Injury Trust to be established under the Imerys Plan pursuant to the Cyprus Settlement, any further use of the proceeds of the Insurance Policies

18

by Cyprus will deplete the value to be assigned to the Talc Personal Injury Trust, thereby harming the Debtors' estates.

5.     Moreover, the Debtors have assumed, by contract, the talc-related obligations of Cyprus such that allowing the Defendants to continue the Talc Actions against Cyprus would effectively liquidate claims against the Debtors outside of the Chapter 11 process.  The Talc Claims against Cyprus and the Debtors are identical in all respects.  The Talc Claims that name the Debtors and Cyprus as co-defendants arise from the same conduct — the pre-1992 mining, processing, and distribution of talc — and assert the same claims based on the same legal theories.  Thus, the Talc Claims against the Debtors and Cyprus are inextricably intertwined, and any judgments against Cyprus would fix liability against the Debtors outside of the bankruptcy process and could result in preferential treatment for certain claimants at the expense of others in contravention of the equitable distribution scheme governing the Talc Personal Injury Trust to be established under the Imerys Plan.

6.     A condition to the effectiveness of the Cyprus Settlement is that the Debtors seek and obtain the injunctive relief sought herein.  In addition to the reasons set forth above, such relief is appropriate to ensure that the Debtors and their creditors obtain and preserve the benefits of the Cyprus Settlement.

7.     The Debtors filed this Complaint pursuant to the terms of the Cyprus Settlement and in an effort to avoid the harm that would result from continued prosecution of the Talc Actions against Cyprus in the tort system and the potential termination of the Cyprus Settlement.  The Talc Claims asserted against Cyprus were assumed by ITA when, in 1992, Cyprus Mines transferred substantially all of its talc related assets and liabilities to Cyprus Talc Corporation ("**Cyprus Talc**", now known as ITA) and, accordingly, are either (a) claims against the Debtors or (b) claims that

19

are tantamount to claims against the Debtors.  Moreover, such claims are being defended by Cyprus through utilization of the Insurance Policies, the rights to which are being transferred to the Talc Personal Injury Trust pursuant to the Cyprus Settlement.

8.      In particular, through this Complaint, the Debtors seek a preliminary injunction under section 105(a) of the Bankruptcy Code enjoining the continuation or commencement of any action by Defendants against Cyprus asserting, on any theory (e.g., joint and several, successor, or vicarious liability or otherwise, including for contribution, reimbursement, subrogation, or indemnity) (each, a "**Talc Action**"),[4] any personal injury claim relating to talc mined, processed, manufactured, sold and/or distributed by any of the Debtors or Cyprus Mines (collectively, the "**Talc Claims**").  This preliminary injunction shall terminate, absent extension by the Court, if an order approving the Imerys Plan, incorporating the Cyprus Settlement, is not entered by June 30, 2021, with such injunction to be extended to September 30, 2021 if an order approving the Imerys Plan entered by June 30, 2021.

9.      Contemporaneously with the filing of this Complaint, the Debtors are also filing the Motion, which requests the relief sought in this proceeding.

### JURISDICTION AND VENUE

10.      This adversary proceeding arises in and relates to the Debtors' Chapter 11 Cases pending before this Court under chapter 11 of the Bankruptcy Code.

11.      The Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This adversary proceeding

---

[4]    A list of the Talc Actions to be stayed is attached as **Appendix B** to this Complaint, which identifies the Cyprus party involved in each action to which the requested relief applies.

is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rules 7008-1 and 9013– 1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.     Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

13.     The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code.

14.     The Debtors have commenced this adversary proceeding pursuant to Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

15.     No prior request for the relief requested herein has been made to this or any other court.

## THE PARTIES

16.     Debtor ITA and Debtor Imerys Talc Vermont, Inc. ("**ITV**") are Delaware corporations.  Debtor Imerys Talc Canada Inc. ("**ITC**") is a Canadian corporation.

17.     Each named Defendant listed on **Appendix A** is a plaintiff in a pending Talc Action against one or more of Cyprus Mines or CAMC.

18.     Each of Defendants Does 1-1000 is a prospective plaintiff who may, at any time while the Chapter 11 Cases are pending, seek to commence a Talc Action against one or both of Cyprus Mines or CAMC.

21

## FACTUAL BACKGROUND

19.    On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On March 5, 2019, the Office of the United States Trustee for the District of Delaware appointed an official committee of tort claimants (as reconstituted from time to time, the "**Tort Claimants' Committee**") [Main Case Docket No. 132] in the Chapter 11 Cases.  On June 3, 2019, the Court entered an order [Main Case Docket No. 647] appointing James L. Patton Jr. as the representative for future talc personal injury claimants pursuant to sections 105(a), 524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code (the "**FCR**").  As of the date hereof, no trustee or examiner has been requested or appointed in the Chapter 11 Cases.

20.    On February 29, 2019, Debtor ITC, as the "foreign representative" acting on behalf of the Debtors' estates, commenced an ancillary proceeding under the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended, in the Ontario Superior Court of Justice (Commercial list) and filed an application therein to recognize the Chapter 11 Cases and the United States as the center of main interest.

21.    The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

### Company and Business Overview

22.    The Debtors' operations are exclusively focused on the mining, processing, and distribution of talc.  The Debtors supply talc to third-party manufacturers for use in such parties' products.  None of the Debtors manufactures the final products or sell such products directly to consumers.  (Van Meter Decl. ¶ 6.)

23.    The Debtors have been owned by various entities over their 100-year history.  In 1989, Johnson & Johnson ("**J&J**") sold the stock of Windsor Minerals, Inc. ("**Windsor**"), which is now known as ITV, to Cyprus Mines.  (*Id.* ¶ 7.)  In 1992, Cyprus Mines and its affiliates transferred such stock and other assets in the talc business to a newly formed subsidiary, Cyprus Talc.  (*Id.*)  Contemporaneously with the 1992 transfer, RTZ America, Inc. (later known as Rio Tinto America, Inc. ("**Rio Tinto**")) purchased the outstanding shares of Cyprus Talc.  (*Id.*)  Also in 1992, Cyprus Talc was renamed Luzenac America, Inc. ("**Luzenac America**"), which is now known as ITA.  (*Id.*)

24.    Pursuant to that certain Agreement of Transfer and Assumption, dated June 5, 1992, by and among Cyprus Mines and Cyprus Talc (the "**ATA**"), Cyprus Mines sold, transferred, and assigned all of its interest in assets, properties, and rights of every type relating to Cyprus Mines' talc business to Cyprus Talc.[5]  Among the rights assigned to Cyprus Talc were the rights to seek the proceeds of, and pursue claims under, certain insurance policies that provide coverage for liabilities arising out of the talc business of Cyprus Mines and/or its affiliates or predecessors.  (*Id.* Ex. B § 2.)[6]  Under the ATA, Cyprus Talc also agreed to assume, subject to certain exclusions not relevant here, from Cyprus Mines all liabilities primarily relating to Cyprus Mines' talc business, including Talc Claims asserted against Cyprus Mines. (*Id.* Ex. B § 4.)

---

[5]    The ATA is attached as **Exhibit B** to the Van Meter Declaration.

[6]    Cyprus has disputed the scope of the assignment under the ATA, including the insurance assignment and the Debtors' position that Cyprus assigned indemnity claims against J&J to the Debtors.  *See* Amended Answer & Counterclaim of Cyprus Mines Corporation and Cyprus Amax Minerals Company to the Debtors' Complaint for Injunctive and Declaratory Relief, *Imerys Talc America, Inc., et al. v. Cyprus Amax Minerals Co., et al.*, Adv. Pro. No. 19-50115 (LSS) (Bankr. D. Del. Mar. 29, 2019) [Docket No. 26]; Complaint, *Cyprus Mines Corp., et al. v. Imerys Talc America, Inc., et al.*, Adv. Pro. No. 20-50626 (LSS) (Bankr. D. Del. June 15, 2020) [Docket No. 1].  These disputes are being resolved in the Cyprus Settlement.

25.     The Debtors were acquired by the "Imerys Group" in 2011 through a non-debtor affiliate holding company, Mircal, S.A.  Mircal, S.A. entered into an agreement with Rio Tinto to purchase the stock of the Rio Tinto corporate group's talc operations, including stock of Luzenac America and Windsor.  (*Id.* ¶ 8.)  At the same time, Mircal S.A. also acquired the stock of Luzenac, Inc. ("**Luzenac**"), which is now known as ITC, from another member of the Rio Tinto corporate group, QIT Fer & Titane, Inc.

26.     Luzenac America, Windsor, and Luzenac — the three Debtors in these Chapter 11 Cases — subsequently changed their names to ITA, ITV, and ITC, respectively.  (*Id.*)

### The Talc Claims

27.     At the time of the acquisition of the Debtors in 2011, there were only approximately eight Talc Claims pending against the Debtors (one OC Claim and seven Mesothelioma Claims (each as defined below)), each of which was in the early stages of litigation.  (*See id.* ¶ 9.)  As of the Petition Date, one or more of the Debtors were among the defendants in thousands of actions brought before various U.S. federal and state courts by multiple plaintiffs asserting Talc Claims. Plaintiffs have historically asserted two types of Talc Claims: (a) claims alleging ovarian cancer or other related gynecological diseases arising as a result of talc exposure ("**OC Claims**") and (b) claims alleging mesothelioma, respiratory cancers or other asbestos-related diseases resulting from talc exposure ("**Mesothelioma Claims**").  As of the Petition Date, there were approximately 13,800 pending lawsuits asserting OC Claims and approximately 850 pending lawsuits asserting Mesothelioma Claims against one or more of the Debtors.  (*Id.*)  Of these cases, one or both of Cyprus Mines or CAMC was named as a co-defendant of the Debtors in approximately 700 lawsuits.  (*Id.*)  In the nearly two years since the Petition Date, the number of lawsuits against Cyprus has grown, and there are currently approximately 955 lawsuits pending against Cyprus

24

Mines and/or CAMC. (Hutchins Decl. ¶ 17.) CAMC has historically obtained dismissal of many suits on the basis that CAMC never mined, sold or supplied talc. (*See id.* ¶ 18.) In recent months, however, the Defendants have increasingly begun to name Cyprus Mines as a defendant in Talc Claims rather than CAMC. (*See id.*)

28.     The vast majority of the Talc Claims that have been asserted against the Debtors to date are based on personal injuries allegedly arising from the plaintiffs' use of J&J baby powder products. (Van Meter Decl. ¶ 10.) The Debtors have historically been J&J's primary supplier of cosmetic talc and, therefore, have been routinely named as a co-defendant of J&J in litigation related to Talc Claims. (*Id.*) As such, although personal care/cosmetic sales have historically constituted only approximately 5% of the Debtors' revenues, the vast majority of the Talc Claims arise from the Debtors' cosmetic sales. (*Id.*) Approximately 99.8% of the pending and closed lawsuits asserting OC Claims against the Debtors named J&J as a co-defendant, and approximately 80.1% of the pending lawsuits asserting Mesothelioma Claims against the Debtors named J&J as a co-defendant. (*Id.*)

### The Debtors' Decision to File for Chapter 11 Reorganization

29.     The Debtors' decision to commence the Chapter 11 Cases was prompted by certain developments arising from the growing number of Talc Claims in the United States. These developments include: (a) the significant increase in settlement demands with respect to cosmetic Talc Claims in the wake of recent verdicts, including a multi-billion dollar verdict rendered against J&J, and the ensuing media focus on talc for cosmetic applications; (b) the increased unwillingness of the Debtors' insurers and third party contractual indemnitors to provide coverage for the Debtors' mounting defense costs and potential liability exposure; and (c) constructive discussions with the FCR that led the Debtors to conclude that the Chapter 11 Cases would be the optimal path

for resolving their historical talc-related liabilities in a manner that maximizes distributable value for all stakeholders.  (*Id*. ¶ 11.)

30.    The Debtors' primary goal in these Chapter 11 Cases is to confirm a substantially consensual plan of reorganization pursuant to sections 105(a), 524(g), and 1129 of the Bankruptcy Code that channels all of the present and future Talc Claims to a trust vested with substantial assets and provides for a channeling injunction prohibiting claimants from asserting against any Debtor, and in light of the Cyprus Settlement any Cyprus Protected Party (as defined in the Imerys Plan), any Talc Personal Injury Claims prior to the Debtors' emergence from these Chapter 11 Cases. While the Debtors dispute all liability as to the Talc Claims, the Debtors believe this approach offers the best alternative to fully, finally, and fairly resolve the Talc Claims.  Moreover, the Imerys Plan could be threatened without the support of Cyprus.  Cyprus has objected to certain aspects of the Imerys Plan, and contributions by the Cyprus Parties that are anticipated to be made pursuant to the Cyprus Settlement will significantly aid in the Debtors' ability to efficiently confirm the Imerys Plan.

### Cyprus Insurance Policies and the ATA

31.    As a result of the various 1992 transactions involving Cyprus Mines' talc business, ITA believes it has the right to seek the proceeds of, and pursue claims under the Insurance Policies.  (*Id*. ¶ 15.)  Specifically, the Insurance Policies consist of numerous primary, excess, and umbrella comprehensive general liability insurance policies issued, or otherwise providing coverage, to Cyprus Mines and/or its affiliates or predecessors between 1961 and 1992, including those policies listed on **Exhibit A** to the Van Meter Declaration.  (*Id*.)  The policies provide coverage for bodily injury that occurs during the respective policy periods.  (*Id*. ¶ 16.)

32.     The Debtors are informed and believe that all of the primary liability policies that could provide coverage for asbestos-related liabilities arising out of the talc business of Cyprus Mines and/or its affiliates or predecessors have been exhausted, except four primary liability policies issued by American Insurance Company from May 1961 to October 1964. (*Id.* ¶ 17.) The remaining coverage consists of umbrella and excess policies issued by various insurers from April 1962 to 1986 with total aggregate limits of approximately $190 million as of the Petition Date (*see id.*), and approximately $180 million as of the date hereof, (*see* Hutchins Decl. ¶ 21.)

33.     The Debtors' property rights in the proceeds of the Insurance Policies issued by various insurers stem from the ATA, pursuant to which, Cyprus Mines agreed to "sell, assign, transfer, convey and deliver" to Cyprus Talc (currently known as ITA), all of its "right, title, and interest in and to the assets, properties, rights and businesses of every type and description used primarily in or relating primarily to Cyprus Mines' talc business, whether real, personal or mixed, tangible or intangible, whether currently in use or idle, fixed or unfixed, accrued, absolute, contingent or otherwise, wherever located" (the "**Transferred Assets**").  (Van Meter Decl. Ex. B § 2.)

34.     The Transferred Assets included all of the right, title and interest of Cyprus Mines in, to and under among other things, the following assets: (i) all contracts, agreements, leases, licenses, permits, orders, commitments of understandings to which Cyprus Mines was a party or entitled to any right or interest; (ii) all contracts, books, records and other data relating primarily to the talc business; (iii) all causes of action and claims of any kind of Cyprus Mines against any other party related primarily to the talc business; and (iv) all other assets and rights of the talc business as a going concern.  (*See id.* §§ 2(h), (j), (k), and (l).)  In exchange, Cyprus Talc (currently known as ITA) agreed to assume, perform, pay and discharge "all of the liabilities or obligations,

whether known, unknown, contingent or otherwise primarily relating to the Transferred Assets, including, without limitation, liabilities and obligations, whether known, unknown, contingent or otherwise arising out of transactions or events occurring on or prior to the Closing and relating primarily to the Transferred Assets" (collectively, the "**Pre-Transfer Talc Liabilities**"). (*Id.* § 4.)

35.     As a result of the ATA, the Debtors have asserted throughout these Chapter 11 Cases that Cyprus Talc acquired (and ITA currently owns) all rights to the proceeds of the Insurance Policies resulting from accrued claims or causes of action against the insurers relating to Pre-Transfer Talc Liabilities.

**Cyprus Litigation and Settlement**

36.     Due to the transfer of assets under the ATA, prior to the Petition Date, ITA voluntarily accepted CAMC's and Cyprus Mines' tender of talc-related asbestos bodily injury lawsuits, subject to certain conditions and reservations, and assumed responsibility for the defense of those lawsuits. (Van Meter Decl. ¶ 20.)  Since July 2016, and until the Petition Date, ITA largely handled the defense of such Talc Claims, and additional Talc Claims that have been filed against Cyprus on Cyprus' behalf. (*See id.*)

37.     On the Petition Date, ITA informed CAMC of its position that, in light of the bankruptcy filings, ITA was forced to rescind its prior acceptance of tenders of Talc Claims underlying talc lawsuits from Cyprus and would be unable to accept any new tenders of underlying Talc Claims from Cyprus. (*Id.* ¶ 21.)  Accordingly, as of the Petition Date, ITA is no longer defending or paying on behalf of Cyprus in the Talc Actions, and Cyprus Mines and CAMC were informed that they would be required to take all actions necessary to assume and pay for their own defense in those actions. (*Id.*)  In a letter dated as of the Petition Date, ITA also informed CAMC

28

of the Debtors' position that Cyprus has no rights to the proceeds of the Insurance Policies and that any attempts to access such proceeds would be a violation of the automatic stay.

38.    On February 28, 2019, Cyprus filed their *Emergency Motion for (I) Interim and Final Orders Granting Relief From the Automatic Stay Under Bankruptcy Code § 362(d) to Use Insurance Coverage Under Cyprus Historical Policies or, In the Alternative, (II) Adequate Protection Under Bankruptcy Code §§ 361 and 363(e)* [Main Case Docket No. 104] (the "**Cyprus Stay Motion**").

39.    On March 7, 2019, the Debtors initiated an adversary proceeding against Cyprus (the "**Cyprus Insurance AP**") seeking, *inter alia*, a judgment declaring that Cyprus no longer has any right to the proceeds of, or to pursue claims under, the Insurance Policies and, therefore, any effort by Cyprus to access proceeds of the Insurance Policies relating to the Talc Claims while the Chapter 11 Cases are pending violates the automatic stay.[7]

40.    Following hearings on the Cyprus Stay Motion and related briefing filed by the Debtors and other parties in interest, Cyprus and the Debtors stipulated to limited stay relief during the pendency of the Cyprus Insurance AP.  On March 26, 2019, the Court entered an agreed upon order permitting Cyprus to use the Insurance Policies to defend and indemnify Cyprus in certain lawsuits asserting asbestos-related claims in which any Cyprus entity is a defendant, and to tender any new lawsuits asserting asbestos-related claims to insurers under the Insurance Policies [Main Case Docket No. 309].  The Debtors reserved their rights to assert claims against Cyprus, and any Cyprus-related entity that obtained the benefit of the Insurance Policies during the pendency of the Cyprus Insurance AP.

---

[7]    The Cyprus Insurance AP is captioned *Imerys Talc America, Inc., et al. v. Cyprus Amax Minerals Company and Cyprus Mines Corp.*, Adv. Pro. No. 19-50115 (Bankr. D. Del. 2019).

41.     Discovery in the Cyprus Insurance AP closed at the end of January 2020 and the proceeding was scheduled for trial on March 25 and March 27, 2020.  In February 2020, prior to submitting summary judgment and opening trial briefs, the Debtors and Cyprus agreed to engage in mediation.  The remaining briefing and trial dates were adjourned and the proceeding was stayed pending the conclusion of mediation.

42.     On June 15, 2020, Cyprus initiated an adversary proceeding against ITA, ITV, J&J, and J&J Consumer Inc. (the "**Cyprus Indemnity AP**").[8]  The issue to be decided in the Cyprus Indemnity AP is whether Cyprus Mines and CAMC retain any indemnity rights against J&J for harm allegedly caused by talc supplied by Cyprus to J&J under two related agreement, both dated January 6, 1989.  The first agreement is the agreement under which Cyprus Mines acquired ITV from J&J, and under which J&J agreed to indemnify Cyprus Mines and its affiliates for any harm allegedly caused by the talc supplied by Cyprus Mines or its affiliates to J&J before 1989.  Under the second agreement, ITV entered into a contract to supply talc to J&J, and J&J agreed to indemnify ITV and its affiliates — which include Cyprus — for any harm allegedly caused by talc supplied by ITV to J&J after that date.  The Debtors maintain that they have indemnification rights against J&J under those agreements, regardless of whatever indemnity rights (if any) Cyprus may have against J&J.

43.     On July 29, 2020, the Debtors filed an answer to Cyprus' complaint in the Cyprus Indemnity AP, asserting various affirmative defenses as well as counterclaims (a) seeking a declaration that Cyprus Mines lacks the right and standing to pursue the causes of action asserted

---

[8]     The Cyprus Indemnity AP is captioned *Cyprus Mines Corp., et al. v. Imerys Talc Am., Inc., et al.*, Adv. Pro. No. 20-50626 (Bankr. D. Del. 2020).

in the complaint, and (b) asserting that Cyprus Mines breached its representations and warranties under certain agreements.

44.     On July 29, 2020, J&J filed a motion to dismiss Cyprus' complaint in the Cyprus Indemnity AP for lack of subject matter jurisdiction or, in the alternative, to abstain or to sever and transfer the claims to the United States District Court for the District of Vermont (the "**J&J Motion to Dismiss**").  On September 1, 2020, Cyprus responded to the Debtors' counterclaims and the J&J Motion to Dismiss, and on September 3, 2020, Cyprus filed a request for oral argument in connection with the J&J Motion to Dismiss.  On September 16, 2020, J&J filed a reply in support of the J&J Motion to Dismiss.  The J&J Motion to Dismiss remains pending.

45.     In December 2020, following months of mediation efforts, the Cyprus Parties, the Debtors, the Tort Claimants' Committee, the FCR, and the Plan Proponents (collectively, the "**Settlement Parties**") agreed to the terms of the Cyprus Settlement, a full and comprehensive resolution and release of — and injunction channeling to the Talc Personal Injury Trust — all Talc Claims against Cyprus.  On December 22, 2020, the Debtors filed the Imerys Plan, which encompasses and seeks approval of the Cyprus Settlement.

46.     Key terms of the Cyprus Settlement are as follows:[9]

    a.  **Global Settlement:**  The Cyprus Settlement provides a framework for a full and comprehensive resolution of all issues between and among the Settlement Parties, and resolves (i) the treatment of Talc Claims relating to the Cyprus Protected Parties, (ii) disputes between Cyprus and the Debtors pertaining to Cyprus' and the Debtors' rights to the Insurance Policies, and (iii) disputes between Cyprus and the Debtors pertaining to Cyprus' and the Debtors' rights to indemnification by J&J.

    b.  **Implementation:**  The Cyprus Settlement will be implemented through two chapter 11 plans: (i) the Imerys Plan and (ii) a chapter 11 plan  to be filed

---

[9]    To the extent this summary conflicts with any provision of the Imerys Plan or the Cyprus Settlement Agreement, the provisions set forth in those documents shall control.  Terms not defined have the meanings set forth in the Imerys Plan.

by Cyprus Mines in a case under chapter 11 of the Bankruptcy Code to be commenced by Cyprus Mines in the United States Bankruptcy Court for the District of Delaware (the "**Cyprus Mines Plan**").

c. **CAMC Contribution:** CAMC will pay a total of $130 million to the Talc Personal Injury Trust in seven annual installments, which shall be guaranteed by Freeport, with the first installment paid within thirty (30) days of the Cyprus Trigger Date (the "**Cyprus Contribution**").

d. **Insurance:** On the Cyprus Trigger Date, the Cyprus Protected Parties will assign any and all rights to and in connection with the Insurance Policies to the Talc Personal Injury Trust, as set out in the Imerys Plan. On the Cyprus Trigger Date, the Talc Personal Injury Trust will assume all present and future obligations associated with recovering proceeds under the Insurance Policies on terms set forth in the Imerys Plan.

e. **Indemnification Rights:** On the Cyprus Trigger Date, the Cyprus Protected Parties shall also transfer and assign to the Talc Personal Injury Trust any and all other rights of reimbursement, contribution, or indemnification relating to or in connection with the Talc Personal Injury Claims as to which the Cyprus Protected Parties are being protected under the Imerys Plan and/or the Cyprus Mines Plan. On the Cyprus Trigger Date, the appropriate Cyprus Protected Parties shall each execute and deliver to the Talc Personal Injury Trust, in a form reasonably acceptable to the Talc Personal Injury Trust, an assignment to the Talc Personal Injury Trust of: (i) all of their rights to or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), or subrogation against any Person relating to the payment or defense of any Talc Personal Injury Claim or any past talc-related claim against the Debtors or the Cyprus Protected Parties prior to the Cyprus Trigger Date, and (ii) all of their other rights to or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), or subrogation against any Person relating to any Talc Personal Injury Claim or other claims channeled to the Talc Personal Injury Trust.

f. **Compromise of Claims:** The Cyprus Settlement (i) releases the Cyprus Protected Parties from the Cyprus Released Claims and (ii) channels to the Talc Personal Injury Trust all Talc Personal Injury Claims against any Cyprus Protected Party.

g. **Releases and Injunctions:** The Imerys Plan and Cyprus Mines Plan will include the broadest releases and channeling injunctions permitted by sections 105(a), 524(g), and 1141(d)(1) of the Bankruptcy Code so as to prevent the assertion of any further talc-related claims against the Cyprus Protected Parties. All claims against the Cyprus Protected Parties subject to the Channeling Injunction shall be channeled to the Talc Personal Injury Trust and resolved in accordance with the Trust Distribution Procedures.

The Imerys Plan contemplates certain releases in favor of the Cyprus Protected Parties to be provided by (i) the Debtors and the Reorganized Debtors, on their own behalf and as representatives of their respective estates, (ii) the Tort Claimants' Committee and the FCR, solely on their own behalf, (iii) the Releasing Claim Holders, and (iv) the Cyprus Settling Talc Insurance Companies.

The Imerys Plan also includes the Supplemental Settlement Injunction order, pursuant to which all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Cyprus Released Claims directly or indirectly against the Cyprus Protected Parties (or any of them) shall be permanently stayed, restrained, and enjoined from pursuing now, or at any time in the future, any Cyprus Released Claims, subject to the occurrence of the Cyprus Trigger Date.

The releases and injunctions provided to the Cyprus Protected Parties will not be effective until the Cyprus Contribution is made to the Talc Personal Injury Trust. Further, all such releases and injunctions in the Imerys Plan and the Confirmation Order with respect to the Cyprus Protected Parties will dissolve if any of the cash payments required to be made by CAMC (or Freeport as guarantor, if applicable) are not timely made.

h. **Section 105 Injunction:**   The Debtors, with the support of the Tort Claimants' Committee and the FCR, will seek an injunction in these Chapter 11 Cases against the commencement or continuation of any talc-related product liability litigation against any of the Cyprus Parties.[10]  The requested injunction shall be on an interim basis and terminate, absent extension by the Court, if an order approving the Imerys Plan is not entered by June 30, 2021.  If an order approving the Imerys Plan is entered by June 30, 2021, then the requested injunction shall be extended through September 30, 2021.   Obtaining the injunction is a condition to the effectiveness of the Cyprus Settlement.

i. **Resolution of Cyprus Litigation:**  The Cyprus Settlement requires that the Cyprus Parties stay and cease prosecuting (on or after December 22, 2020) and/or dismiss or withdraw (upon the occurrence of the Cyprus Trigger Date) all adversary proceedings, any proofs of claim, objections, discovery demands and discovery disputes, and any other litigation against the Debtors, the Imerys Protected Parties, the Tort Claimants' Committee, and the FCR.  Further, and subject to the terms of the Plan, all such releases and Injunctions in the Plan and Confirmation Order with respect to the Cyprus Protected Parties will dissolve if any of the cash payments required to be

---

[10]   Under the Cyprus Settlement, the Debtors are required obtain such an injunction by no later than January 29, 2021.  Cyprus has agreed to extend this deadline to February 12, 2021.

RLF1 24668386v.1

made by CAMC (or Freeport as guarantor, if applicable) are not timely made.

j.  **Conditions to Effectiveness:**  The Cyprus Settlement shall not be effective and binding upon the Settlement Parties unless each of the following conditions has been satisfied or waived by the applicable Settlement Parties:

- approval by the Bankruptcy Court of the Imerys Plan, including approval of the Cyprus Settlement, by June 30, 2021;

- approval by a bankruptcy court of the Cyprus Mines Plan, including approval of the Cyprus Settlement, by September 30, 2021;

- the Affirmation Order shall have been entered by the United States District Court for the District of Delaware with respect to the Imerys Plan and shall have become a final order;

- an affirmation order shall have been entered by the United States District Court for the District of Delaware with respect to the Cyprus Mines Plan and shall have become a final order; and

- satisfaction of other conditions precedent set forth in Section 9.2 of the Imerys Plan, as well as substantially similar conditions in the Cyprus Mines Plan.

## THE NEED FOR THE REQUESTED RELIEF

47.    The Debtors commenced these Chapter 11 Cases to finally and fairly resolve talc related claims against them through the consummation of a plan of reorganization that includes the establishment of a trust and channeling injunction pursuant to sections 105 and 524(g) of the Bankruptcy Code.   The relief sought by this adversary proceeding — enjoining the commencement or continuation of any Talc Actions against Cyprus by any of the Defendants — is critical to the Debtors' ability to proceed with and achieve the purpose for which they commenced the Chapter 11 Cases.

48.    In the absence of an injunction or declaration that prohibits the filing or continued prosecution of Talc Actions against Cyprus:

34

a. Many of the Defendants who have already filed Talc Actions against Cyprus intend to continue prosecuting such claims against Cyprus outside of the bankruptcy;

b. Cyprus will be compelled to continue defending the Talc Actions and, as a result, deplete available funds under the Insurance Policies to the detriment of the Debtors and their key constituents, including the holders of Talc Claims as a class; and

c. Due to the contractual indemnification obligations the Debtors owe Cyprus and identical nature of the Talc Claims at issue, continuation of the Talc Actions in the tort system would have the effect of liquidating claims against the Debtors outside of the bankruptcy process, jeopardizing the Debtors' efforts to equitably and globally resolve the Talc Claims.

49.    Prior to the commencement of the Chapter 11 Cases, Cyprus Mines and/or CAMC had been named as a co-defendant of the Debtors in approximately 700 Talc Actions, and as described *supra*, prior to the Petition Date, ITA (formerly known as Cyprus Talc) largely handled the defense of such Talc Actions on Cyprus' behalf.  Since the Petition Date, however, Cyprus has taken up defense of the Talc Actions and used coverage under the Insurance Policies to fund such defense and, in certain instances, resolve Talc Claims.

50.    The Debtors, which have consistently maintained that they — and not Cyprus — have a right to the Insurance Policies and any proceeds thereunder (Cyprus has disputed that assertion), have reached a global resolution of all issues relating to Cyprus.  Under that Cyprus Settlement, Cyprus will make a $130 million contribution to and assign any and all rights in the Insurance Policies to the Talc Personal Injury Trust.

51.    Permitting the Defendants to liquidate claims against the Debtors outside the bankruptcy process and deplete estate resources by continuing or commencing Talc Actions against Cyprus, while the Debtors simultaneously attempt to achieve a comprehensive and fair resolution of the identical Talc Claims through these Chapter 11 Cases, would (a) undermine the

35

purpose of the Chapter 11 Cases, (b) result in irreparable harm to the Debtors' estates by, among other things, further depleting valuable estate assets and potentially jeopardizing the Cyprus Settlement, and (c) circumvent the purpose and spirit of the automatic stay by allowing the Defendants to in effect pursue Talc Actions against the Debtors.  Moreover, as a condition to the Cyprus Settlement, the Debtors are required to seek the injunctive relief sought herein.  Thus, failure to obtain injunctive relief could impede the Debtors' progress toward achieving a resolution of these Chapter 11 Cases.

52.     Courts have consistently exercised their injunctive powers under section 105(a) of the Bankruptcy Code to enjoin asbestos and other mass-tort claimants from continuing or commencing actions against related parties under similar circumstances in mass-tort bankruptcies.  (*Opening Brief in Support of Debtors' Motions for Preliminary Injunction* (the "**Brief**") at ¶¶ 55-59, filed contemporaneously herewith (citing cases).)

## <u>NATURE OF RELIEF REQUESTED</u>

53.     To guard against the severe and irreparable harm that the Debtors would suffer in the event that the Defendants are permitted to continue or commence Talc Actions against Cyprus, the Debtors seek a preliminary injunction prohibiting the Defendants from filing or continuing to prosecute any Talc Actions against Cyprus until at least June 30, 2021, with the such injunction to be extended through September 30, 2021 if the Imerys Plan is approved by June 30, 2021.

## <u>COUNT ONE</u>

**(Preliminary Injunctive Relief Pursuant to Sections 105 and 362 of the Bankruptcy Code)**

54.     The Debtors repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

36

55.     Section 105(a) of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Relief under section 105 is particularly appropriate in chapter 11 cases, such as these, where it is necessary to protect the Debtors' ability to effectively confirm a plan of reorganization and to preserve the property of the Debtors' estates.  A bankruptcy court may, therefore, in its discretion, stay actions under section 105, even where the case may otherwise be exempt from the automatic stay.

56.     Pursuant to sections 362 and 105(a) of the Bankruptcy Code, this Court may enjoin creditor actions against third parties where necessary to prevent harm to the Debtors' estates or to assure the orderly administration of the Debtors' chapter 11 proceedings.  Thus, this Court has the jurisdiction and authority to enjoin the Talc Actions against Cyprus pursuant to section 105(a) because the Talc Actions against Cyprus are related to the Debtors' bankruptcy proceedings and the continuation of the Talc Actions against Cyprus would unduly interfere with the Chapter 11 Cases and deplete estate assets.

57.     An injunction is appropriate to prohibit the Defendants from filing or continuing to prosecute any Talc Actions against Cyprus while the Chapter 11 Cases are pending, and is critical to the Debtors' ability to proceed with and achieve the purpose for which they commenced the Chapter 11 Cases.

58.     The Debtors are likely to prevail on the merits of their Complaint.  The injunctive relief sought by the Debtors is necessary to preserve estate assets and provide the Debtors an opportunity to obtain a global and fair determination of all current and future Talc Claims, an option that is not available in the tort system.

59.     The Debtors' prospects for a successful reorganization are high.  The Chapter 11 Cases were entered into in good faith in an effort to equitably resolve thousands of Talc Claims and related Talc Actions and the Debtors anticipate having sufficient resources to fund the costs of the Chapter 11 Cases as well as a plan of reorganization that includes the creation of a trust and channeling injunction pursuant to sections 105 and 524(g) of the Bankruptcy Code.  As of the date hereof, the Debtors have made significant progress towards establishing a path to confirm the Imerys Plan.  Specifically, the Debtors have brokered several key settlements, including: (a) a comprehensive settlement of issues among the Plan Proponents, which includes a substantial contribution from the non-debtor Imerys entities in consideration for the releases and channeling injunction provided under the Imerys Plan (the "**Plan Proponent Settlement**"), and (b) a comprehensive settlement among the Debtors, on the one hand, and Rio Tinto, on behalf of itself and the issuers of certain insurance policies covering talc related personal injury claims, and for the benefit of the Rio Tinto Protected Parties, and Zurich American Insurance Company, in its own capacity and as successor-in-interest to Zurich Insurance Company, U.S. Branch, on behalf of itself and for the benefit of the Zurich Protected Parties, on the other hand (the "**Rio Tinto/Zurich Settlement**").  Building on those successes, the Cyprus Settlement is a global resolution of all issues among the Debtors and Cyprus, which represent a significant portion of the remaining disputes in these Chapter 11 Cases.  Specifically, CAMC has agreed to contribute $130 million in cash and the Cyprus Parties have agreed to assign any and all rights to the Insurance Policies (with outstanding limits of $180 million remaining) to the Talc Personal Injury Trust.  It bears noting that the Tort Claimants' Committee and the FCR are both party to the Cyprus Settlement, the Rio Tinto/Zurich Settlement, and the Plan Proponent Settlement.

60.    Taken together, these settlements remove significant impediments to the Debtors'

exit from bankruptcy and establish a clear path to confirmation of the Imerys Plan.  On January

11, 2021, the Debtors' filed the Imerys Plan and related disclosure statement, each of which

incorporates the settlements reached to date.  Upon approval of the disclosure statement, the

Debtors will be prepared to commence solicitation and move towards confirmation in lockstep

with their key constituencies, including the Plan Proponents, the Tort Claimants' Committee, and

the FCR.

61.    Failure to grant the requested injunction would irreparably harm the Debtors'

reorganization efforts and effectively deprive the Debtors of the protections afforded by the

automatic stay.  In light of (a) ITA's assumption, under the ATA, of Cyprus Mines' talc related

liabilities, (b) the Cyprus Settlement, and (c) the estoppel and record taint risks, the prosecution of

the Talc Actions against Cyprus is tantamount to continued prosecution of those claims against the

Debtors in the tort system thereby defeating the central purpose of the Chapter 11 Cases: a global,

permanent and equitable resolution of all current and future Talc Claims.  Because Cyprus will

assign all rights under the Insurance Policies to the Talc Personal Injury Trust pursuant to the

Cyprus Settlement, any recoveries against Cyprus would have the effect of depleting valuable

estate assets.  Moreover, any judgments against Cyprus would have the effect of fixing Talc Claims

against the Debtors outside of the Chapter 11 Cases.

62.    However, the harm, if any, an injunction might cause the Defendants would be

minimal.  While an injunction might delay the efforts by certain Defendants to litigate Talc Claims

against Cyprus, any talc-related claims against defendants other than the Debtors and Cyprus can

continue notwithstanding the entry of the injunction.  In any event, mere delay is insufficient to

prevent a court from issuing an injunction.  In addition, because the Chapter 11 Cases afford the

Defendants a forum to participate and be heard regarding the ultimate treatment of the Talc Claims, any prejudice resulting from an injunction against pursuing the Talc Actions is minimal.

63.     Likewise, in the absence of the injunction, litigation of Talc Claims against Cyprus would create the significant risk that recoveries on the Talc Claims of certain claimants would be different than recoveries other similarly situated claimants ultimately receive based on court-approved trust distribution procedures.  Enjoining the continuation or commencement of Talc Actions against Cyprus during the pendency of the Chapter 11 Cases is, therefore, fully consistent with, and necessary for the Debtors to pursue a global and equitable resolution of talc-related claims that have or will be asserted against the Debtors and Cyprus.

64.     Finally, the public interest weighs in favor of an injunction.  There is a strong public interest in a successful chapter 11 reorganization.  Furthermore, it is in the public interest to promote justice in the court system.  Here, this can only be achieved by resolving any Talc Claims against the Debtors and Cyprus in the Chapter 11 Cases in a fair and global manner that treats all current and future talc claimants equitably.  This result will not be possible if piecemeal litigation of the Talc Claims in the tort system is permitted to circumvent the bankruptcy process.

65.     Accordingly, an injunction barring the Defendants from commencing or continuing any Talc Actions against either Cyprus Mines or CAMC is appropriate and essential to the orderly and effective administration of the Debtors' estates, and good cause exists for the entry of injunctive relief pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

66.     WHEREFORE, the Debtors respectfully request that this Court: (a) after notice and a hearing, issue a preliminary injunction prohibiting the filing or continued prosecution of Talc Actions by the Defendants against either Cyprus Mines or CAMC pursuant to sections 105 and

40

362 of the Bankruptcy Code, with such injunction to terminate, absent extension by a further order

of the Court, if an order approving the Imerys Plan, incorporating the Cyprus Settlement, is not

entered by June 30, 2021; *provided* that such injunction shall be extended through September 30,

2021 if an order approving the Imerys Plan is entered on or before June 30, 2021; and (b) grant

such other and further relief as the Court may deem proper.

Dated:  January 21, 2021
       Wilmington, Delaware

Respectfully submitted,

*/s/ Marcos A. Ramos*
_____

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
        merchant@rlf.com
        ramos@rlf.com
        steele@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Amy C. Quartarolo (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
        kim.posin@lw.com
        amy.quartarolo@lw.com
        helena.tseregounis@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

*Counsel for Debtors and Debtors-in-Possession*